Núm. 7942.—PUEBLO, apldo. *v.* RAMOS, aplte.—C. D. San Juan. Abril 17, 1940.

(Por la Corte, a propuesta del Juez Asociado Sr. Hutchison.)

POR CUANTO, en el caso arriba indicado los únicos señalamientos de error son:

"1. La Corte de Distrito de San Juan cometió error al no trasmitir al jurado instrucciones sobre el delito de homicidio voluntario sostenidas por la evidencia.

"2. La Corte de Distrito de San Juan cometió error al declarar sin lugar la moción de nuevo juicio presentada por el acusado y que se basaba en lo siguiente: Que a pesar de la evidencia justificativa de una instrucción al jurado sobre homicidio voluntario, el Hon. Marcelino Romany, Juez de la Corte de Distrito de San Juan, erróneamente informó a dicho tribunal de hechos acerca de los veredictos que de acuerdo con la evidencia producida en el caso podía rendir, informándole que solamente podía rendir un veredicto de culpabilidad de asesinato en primer grado o de culpabilidad de asesinato en segundo grado, negándose dicho juez a informar a dicho cuerpo, que podía rendir un veredicto de culpabilidad de homicidio voluntario, no obstante el hecho de existir evidencia en el caso para sostener dicha instrucción sobre homicidio voluntario. (Págs. 4, 5 y 6 del Legajo de Sentencia.)

"3. La Corte de Distrito de San Juan cometió error al imponer al acusado la pena excesiva de treinta años de presidio con trabajos forzados."

POR CUANTO, la única prueba relativa al supuesto homicidio voluntario consiste en la declaración del acusado, una síntesis de la cual, hecha en el alegato del apelante, reza como sigue:

"De acuerdo con su declaración, el acusado y apelante Santiago Ramos es puertorriqueño, marino desde 1935, casado y con dos hijos. Su madre y cinco hermanos viven en Puerto Rico, y su esposa e hijos en Nueva York. Ganaba de marino $55 mensuales aparte de $35 o $40 mensuales de propinas. Tiene aprobado el primer año de escuela superior. Es la primera vez que lo procesan.

"En el vapor Borinquen en que últimamente trabajaba, Víctor Clements, el interfecto, era el mayordomo segundo y su jefe inmediato. Éste era natural de Curazao y desde que se inició en el puesto mencionado le dió con despedir por nimiedades a los marinos puertorriqueños sustituyéndolos por curazaeños, lo cual motivó una huelga de los marinos puertorriqueños la que fué ganada por éstos obteniendo en consecuencia un mejor trato y consideración del mencionado Víctor Clements, el interfecto. A raíz de dicha huelga, que ocurrió a fines del año 1936, el acusado solicitó y obtuvo una plaza de camarero, en la cual no duró mucho tiempo porque el interfecto lo despidió injustamente. No obstante, consiguió,

por su buena conducta y disciplina, ser repuesto en su cargo de camarero. En el último viaje a Nueva York y en ocasión de preguntarle al interfecto que si él, el acusado, "estaba supuesto a vender las sillas· de cubierta", tal pregunta le valió que el interfecto le formulara cargos. Una vez llegado el barco a Nueva York, se le acercó el interfecto para decirle que por el asunto de las sillas sobre cubierta quedaba cesante. Se querelló ante el primer mayordomo, pero éste, por razones de ética no quiso intervenir cerca del interfecto para que retirara los cargos contra el acusado. El interfecto,· a quien el acusado habló para que retirara los cargos, le replicó a éste que arreglara el asunto como pudiera porque él no retiraría aquéllos. Recurrió entonces a un delegado de la Unión de Marinos para que ejerciera sus buenos oficios en el asunto, y al enterarse de ello el interfecto le advirtió al acusado que el caso era uno de vida o muerte y tan pronto se encontrasen en tierra vería a ver si era "hombre suficiente". Los cargos no llegaron a ventilarse ante el delegado de la unión el día fijado para la vista porque no se presentó el interfecto y además porque cuando el acusado resolvió dejar el vapor e irse a su casa en Nueva York, el delegado consiguió que lo dejaran trabajar de lavaplatos en el último viaje del vapor a Puerto Rico. Cuando llegó a la isla, el acusado bajó a tierra con ciertos objetos personales y una pistola. Dicha arma no era de su propiedad y sí de un amigo, que se la empeñó en $8; tenía el propósito de dejarla en casa de su madre y devolverla a su dueño oportunamente.

"Andando hacia la casa de su madre, entró a un café a tomarse un refresco. Cuando se hubo tomado éste, volvió la cara y vió al interfecto sentado en una mesa acompañado de dos o tres amigos. En este momento notó que el interfecto lo miró y ambos se miraron durante cinco segundos. Fué en ese instante que le llegó "un estado de cólera y de protección" contra el hombre que lo había amenazado en el vapor advirtiéndole que el caso entre ellos dos era uno de vida o muerte que arreglaría como hombre tan pronto se encontrasen en tierra, que "pensando en mi familia y en la protección mía misma", sacó la pistola y lo mató, en un arrebato de cólera."

POR CUANTO, dicha declaración, sin más si bien explica el móvil del asesinato y expone ciertas circunstancias atenuantes, no puede considerarse como prueba tendiente a reducir el asesinato establecido por la prueba de cargo a homicidio voluntario, y en tal virtud la corte inferior no cometió los errores imputádosle en el primero y segundo de los referidos errores, al no trasmitir al jurado las instrucciones sobre homicidio voluntario ni al declarar sin lugar la moción sobre nuevo juicio, basada en los mismos motivos. *Pueblo* v. *Villanueva,* 49 D.P.R. 63.

POR CUANTO, atendidas las circunstancias especiales del caso, la declaración no contradicha del acusado en cuanto a los antecedentes y móvil del delito, el hecho de no haber sido procesado antes por delito alguno, y la prueba en cuanto a su buena reputación, nos inclinamos a creer que la pena máxima de treinta años con trabajos forzados impuéstale al acusado es algo excesiva, y sería más justo un castigo menos severo.

Por TANTO, este tribunal en el ejercicio de su discreción. y visto el caso de *Pueblo* v. *Fernández,* 50 D.P.R. 896, por la presente modifica la sentencia dictada por la Corte de Distrito de San Juan, con fecha 27 de febrero de 1939, rebajando, como por la presente rebaja, la pena impuesta al acusado a quince años de presidio con trabajos forzados, en vez de treinta años con trabajos forzados, y así modificada, se confirma dicha sentencia en unión de la resolución declarando sin lugar la moción de nuevo juicio.